IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIMOTHY LORNE YOUNGBLOOD,
#B02004,

Plaintiff,

vs.

ILLINOIS DEPT. OF CORRECTIONS,
KIM BUTLER,
GUY D. PIERCE,
KURTIS T. HUNTER,
DR. JOHN TROST,
JOHN DOE #2,
JOHN DOE #1,
JOHN R. BALDWIN, and
WEXFORD HEALTH SOURCES, INC.,

Defendants.                                    Case No. 17-cv-807-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Timothy Youngblood, an inmate who is currently incarcerated at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that he was denied adequate medical care for two inguinal hernias over the course of four years at Sangamon County Jail (2013-14), Shawnee Correctional Center (2014-16), Pontiac Correctional Center (2016), and Menard Correctional Center (2016-17). (Doc. 1, pp. 1-11). The inadequate medical care allegedly exacerbated his condition and resulted in unnecessary pain and emotional distress, in violation of the Eighth Amendment and Illinois law. *Id*.

1

In connection with these claims, Plaintiff names the following defendants: Wexford Health Sources, Inc. ("Wexford"), the Illinois Department of Corrections ("IDOC"), John Baldwin (IDOC's Director), Kim Butler (Menard's warden), Doctor Trost (Menard's medical director), Guy Pierce (Pontiac's warden), John Doe #1 (Pontiac's medical director), Kurtis Hunter (Shawnee's warden), and John Doe #2 (Shawnee's medical director). (Doc. 1, p. 2). Plaintiff seeks monetary damages and injunctive relief against them. (Doc. 1, pp. 1, 11).

The Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must

cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under this standard.

### **The Complaint**

According to the Complaint, Plaintiff has been denied adequate medical care for two inguinal hernias for the past four years. (Doc. 1, p. 1). He was diagnosed with one hernia in April 2013 and another in 2016. (Doc. 1, p. 3; Doc. 1-1, pp. 8-9). Other than pain relievers and fiber supplements, however, Plaintiff was denied treatment for the hernia(s) at Sangamon County Jail ("Jail") where he was housed until January 2014, at Shawnee Correctional Center ("Shawnee") where he was housed until February 2016, at Pontiac Correctional Center ("Pontiac") where he was housed until July 2016, and at Menard Correctional Center ("Menard") thereafter. (Doc. 1, pp. 3-4).

The first hernia became incarcerated and necessitated emergency surgery on April 5, 2017. (Doc. 1, p. 4; Doc. 1-1, pp. 17-25). This was five months after Wexford authorized surgery on November 4, 2016, based on the fact that the hernia was "double fist size" and not reducible. (Doc. 1-1, p. 16). Plaintiff developed a second inguinal hernia, which he attributes to the delay in repairing the first. (Doc. 1, p. 4). Although his surgeon noted that the second hernia was worse than he thought, it has not yet been repaired. *Id*. Plaintiff worries that he

3

will die of gangrene without surgery. *Id*. However, he does not allege that any medical professional has recommended surgery on it. *Id*.

Plaintiff claims that the delay in repairing both hernias amounts to cruel and unusual punishment in violation of the Eighth Amendment and intentional infliction of emotional distress under Illinois state law. He blames the delay on a policy, custom, or widespread practice espoused by Wexford and instituted by IDOC Director Baldwin, which "simply does not consider the patient's level of pain as a factor" when assessing the need for surgery. (Doc. 1, pp. 3-5). He also cites other "problematic overarching policies" that limit "the resources and staff necessary to adequately treat inmates' serious medical conditions." (Doc. 1, pp. 3-4). According to the Complaint, a prisoner who has a "painful though reducible hernia[ ]" may have to endure "years of intermittent hernia pain before the hernia becomes strangulated or incarcerated." (Doc. 1, p. 5). Only then is surgery authorized. (Doc. 1, pp. 4-5).

Plaintiff maintains that the IDOC and Director Baldwin learned of his hernia(s) and denial of medical care in "numerous grievances" tendered to Director Baldwin and Menard officials, including letters dated March 3, 2016,[1] May 15, 2016,[2] and January 26, 2017.[3] (Doc. 1, p. 5). However, Director

---

[1] Plaintiff filed this document with the Complaint. (Doc. 1-1, pp. 1-2). It is a grievance that he prepared while incarcerated at Pontiac to complain about the denial of medical care at Shawnee. *Id*. The grievance was sent directly to the Administrative Review Board and was not signed by any of the defendants. *Id*.
[2] Plaintiff did not file this document with his Complaint or describe it in any detail. (*See* Docs. 1, 1-1).
[3] Plaintiff filed this document with the Complaint. (Doc. 1-1, p. 7). It is a response from the IDOC to two of Plaintiff's grievances (*i.e.*, dated May 15 and August 23, 2016). *Id*.

4

Baldwin "took no action to ensure that [Plaintiff] received adequate medical care." (Doc. 1, p. 6).

Kim Butler (Menard's warden) and Guy Pierce (Pontiac's warden) allegedly learned of Plaintiff's serious medical needs in grievances and letters tendered to them on May 15, 2016, and January 26, 2017. (Doc. 1, p. 6). These defendants also took no action to ensure that Plaintiff received adequate medical care. *Id*.

Plaintiff allegedly asked Doctor Trost (Menard's medical director) for medical care, including surgery, after informing the doctor that he had been routinely denied treatment for his hernia(s). (Doc. 1, pp. 7-8). Doctor Trost also learned about the denial of proper medical care in the grievances and letters dated May 15, 2016, and January 26, 2017. *Id*. Even so, the doctor failed to schedule surgery in a timely manner or ensure that Plaintiff received emergency treatment. *Id*.

Plaintiff includes several other general allegations. (Doc. 1, pp. 8-10). Oddly, these allegations include blank spaces where defendants' names should appear, but no names are inserted. *Id*. He generally alleges that the defendants "ignored his requests for emergency medical surgery for his inguinal hernias." (Doc. 1, p. 8). He further alleges that they failed to "adequately address" his numerous complaints of pain and suffering. *Id*. Finally, he alleges that their conduct was "extreme and outrageous," causing severe emotional distress. (Doc. 1, pp. 9-11).

---

The response indicates that the issue is "moot" because Plaintiff's surgery "will be scheduled." *Id*. Director Baldwin signed the response. *Id*.

Plaintiff seeks monetary damages against the defendants. (Doc. 1, p. 11). In addition, he requests injunctive relief that includes "[s]ufficient and timely medical surgery to fully, adequately and permanently treat [his] serious medical conditions, including but not limited to inguinal hernias." *Id*.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in the Complaint into the following enumerated counts:

**Count 1** - Defendants exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment when they delayed or denied treatment and surgery for his two inguinal hernias.

**Count 2** - Defendants are liable under Illinois state law for the intentional infliction of emotional distress arising from their delay in treating Plaintiff's inguinal hernias.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding the merits.

## Severance

As part of screening, district courts are strongly encouraged to exercise discretion and sever unrelated claims against different defendants into separate suits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The Seventh Circuit Court of Appeals has warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to

circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, -- F. App'x --, 2017 WL 2417889 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them).

Consistent with Seventh Circuit precedent, this Court has considered whether the claims arising at Sangamon County Jail,[4] Shawnee, Pontiac, and Menard are properly joined. At first glance, it appears that severance may be appropriate. Plaintiff asserts claims against officials at three prisons for conduct that spans four years. However, he names Wexford, the IDOC, and Director Baldwin in connection with all of his constitutional claims, and he asserts the same two claims against officials at each prison. In addition, Plaintiff attributes the constitutional deprivations at all three institutions to the same policy, custom, or practice of excluding pain when assessing the need for hernia surgery. Given that there are common defendants involved in virtually identical claims arising at each prison, the Court declines to sever any claims in the Complaint at this time.

It is also worth noting that the only surviving claims pertain to Plaintiff's care at Menard. Should Plaintiff amend his complaint at any time during the pending action and include unrelated claims against different defendants therein, he is **WARNED** that all unrelated claims remain subject to severance into one or

---

[4] Although he mentions the denial of medical care for his first hernia at Sangamon County Jail in 2013-14, Plaintiff names no officials from the Jail as defendants. Any claims arising from his detention at the Jail are therefore considered dismissed without prejudice from this action.

7

more separate suits and the assessment of a filing fee for each newly severed case.

## Count 1

The Eighth Amendment prohibits the cruel and unusual punishment of prisoners. *Estelle v. Gamble*, 428 U.S. 97, 104 (1976). The denial of medical care may support an Eighth Amendment claim. *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To state a claim, a plaintiff must show that he suffered from a sufficiently serious medical need, which is an objective standard. *Id*. He must also demonstrate that the defendant responded with deliberate indifference, which is a subjective standard. *Id*.

The Seventh Circuit Court of Appeals has frequently recognized hernias as a serious medical condition. *See, e.g., Heard v. Tilden*, 809 F.3d 974 (7th Cir. 2016); *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011); *Johnson v. Doughty*, 433 F.3d 1001, 1012-14 (7th Cir. 2006); *Williams v. Prison Health Services, Inc.*, 167 F. App'x 555 (2006); *Heard v. Sheahan*, 253 F.3d 316, 317-18 (7th Cir. 2001); *Chapman v. Keltner*, 241 F.3d 842, 846-47 (7th Cir. 2001). Plaintiff's two inguinal hernias -- one of which was the size of two fists and not reducible -- are sufficiently serious to satisfy the objective component of this claim at screening. *Id*. Plaintiff's pain also presents a separate objectively serious medical condition. *See Gonzalez*, 663 F.3d at 314 (chronic pain presents "separate objectively serious condition"); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

The subjective component of this claim requires Plaintiff to demonstrate

that each defendant exhibited deliberate indifference to his hernias. Deliberate indifference is shown when a defendant knows of and disregards a serious risk of harm. *Riley v. Kolitwenzew*, 640 F. App'x 505, 508 (7th Cir. 2016) (citing *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). A defendant's "blatantly inappropriate" response to frequent complaints of pain associated with a hernia supports a deliberate indifference claim. *Gonzalez*, 663 F.3d at 314 (citations omitted). Likewise, the decision to stall surgery also states a claim, where it results in prolonged pain. *Heard*, 809 F.3d at 981 (citing *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (explaining that "[e]ven a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference.")).

The allegations suggest that Doctor Trost was deliberately indifferent to Plaintiff under this standard. Doctor Trost was allegedly responsible for Plaintiff's medical care at Menard in 2016-17. He was aware that Plaintiff's hernias remained untreated but failed to ensure proper treatment of the hernias or associated pain. Intentionally disregarding "a known, objectively serious medical condition that poses an excessive risk to an inmate's health" gives rise to liability under the Eighth Amendment. *Gonzalez*, 663 F.3d 311 (7th Cir. 2011). Count 1 shall proceed against Doctor Trost.

The exhibits also indicate that Director Baldwin received written notice of Plaintiff's untreated hernia in January 2017. (Doc. 1-1, p. 7). He agreed that the

9

issue was "moot" because hernia surgery was going to be scheduled in the future. *Id*. At the time, no date was set for surgery, and Plaintiff did not actually undergo surgery until the hernia became incarcerated and emergency surgery was performed on April 5, 2017. (Doc. 1, p. 4; Doc. 1-1, pp. 17-25). It is difficult to understand how the issue was "moot" in January 2017 under these facts. Whether Director Baldwin's decision to sign off on the denial of Plaintiff's grievances amounted to deliberate indifference, as opposed to mere negligence, remains to be seen. At the early stage of proceedings, however, the Seventh Circuit has indicated that district courts may infer that prison administrators in this context "do bear some responsibility for the alleged misconduct." *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (internal citation omitted).

Further, the allegations suggest that Director Baldwin, acting on behalf of the IDOC, instituted a policy espoused by Wexford of denying medical care to inmates with painful but reducible hernias. Plaintiff maintains that this policy of excluding pain from the assessment for surgery in hernia patients actually caused the deprivation of his constitutional rights. Count 1 is subject to further review against Director Baldwin, in his individual capacity, based on his involvement in denying Plaintiff's grievances and for his role in instituting the policy that allegedly caused the denial or delay of Plaintiff's treatment. *See Heard*, 809 F.3d at 981 ("involvement as a policy maker does not insulate [official] from personal liability for his *own* actions, even when making and enforcing policy") (citing *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (rejecting view that "state officials may not be held

liable in their personal capacity for actions they take in their official capacity");
*Duane v. Lane*, 959 F.2d 673, 675 n. 1 (7th Cir. 1992)).

Count 1 shall also proceed against Wexford. In the case of a private medical corporation, like Wexford, deliberate indifference is shown when a policy, custom, or widespread practice attributable to the corporation caused the violation. *Woodward v. Correctional Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (A private corporation may be liable under § 1983 for constitutional violations of its employees if an official corporate policy caused the violation.). *See also Cotts v. Osafo*, 692 F.3d 564 (7th Cir. 2012). Plaintiff alleges that Wexford adopted the policy that caused a delay in his treatment.[5] For this reason, this claim is subject to further review against Wexford.

The Court will not allow Count 1 to proceed against the IDOC or attribute policy decisions to this defendant. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Parker v. Franklin* Cty. Cmty. Sch. Corp., 667 F.3d 910, 926 (7th Cir. 2012). Count 1 is therefore considered dismissed without prejudice against the IDOC.

Further, this claim shall be dismissed against all other defendants without prejudice, including Warden Hunter, Warden Pierce, Warden Butler, John Doe

---

[5] The Complaint vaguely alludes to other "overarching policies" created by Wexford that limited staffing and resources available to treat inmates. However, Plaintiff does not plausibly allege that any of the policies resulted in the denial or delay in his treatment. The only policy claim at issue, then, is whether the exclusion of pain from surgical assessment of hernia patients resulted in the constitutional deprivation at issue.

11

#1, and John Doe #2. The allegations offered in support of the Eighth Amendment claim against these defendants are thin. Time and again, the Complaint includes blank spaces where the names of defendants should be inserted. (Doc. 1, pp. 8-10). The Complaint appears to be incomplete.

In an effort to state a claim against them, Plaintiff refers to three communications that allegedly put them on notice of his need for medical care, *i.e.*, letters or grievances dated March 3, 2016, May 15, 2016, and January 26, 2017. However, Plaintiff was no longer housed at Shawnee at the time he prepared any of these communications. He was housed at Pontiac until July 2016 and then transferred to Menard. Therefore, the communications certainly do not give rise to a claim against the Shawnee officials. It appears that the communications were also insufficient to put Pontiac officials on notice of Plaintiff's need for medical treatment. Although Plaintiff prepared the grievance dated March 3, 2016, while he was still incarcerated at Pontiac, he did not claim that he was being denied medical care there. He complained about the denial of care at Shawnee and sent his complaint directly to the ARB. There is also no indication that Menard officials received or were aware of this complaint.

The communication dated May 15, 2016, is not included with the Complaint or described in any detail therein. The Court is therefore unable to determine whether it supports Plaintiff's claims against any defendants. The response to his grievances dated January 26, 2017, mentions the May 15th grievance in passing when denying it as "moot." Still, the Court lacks sufficient

information about the content of the grievance to assess potential liability on the part of any of these defendants.

Under the circumstances, the Court cannot rely on either the March 3rd or May 15th communication when assessing what these defendants knew or whether they were personally involved in the denial of medical care for Plaintiff's hernia. At most, the January 26, 2017, communication supports a claim against Director Baldwin. The Complaint otherwise offers insufficient allegations of deliberate indifference to support a claim under Count 1 against Warden Hunter, Warden Pierce, Warden Butler, John Doe #1, and John Doe #2.

With that said, Menard's warden is properly named as a defendant because Plaintiff seeks injunctive relief. *Gonzalez*, 663 F.3d at 315. However, Warden Kimberly Butler has been replaced by Acting Warden Alex Jones. Therefore, the Court will substitute Acting Warden Alex Jones as a defendant, given that he or she would be responsible for ensuring that any injunctive relief is carried out. *Id*. (citing *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989)).

In summary, Count 1 shall proceed against Doctor Trost, Director Baldwin, and Wexford. This claim shall be dismissed without prejudice against all other defendants for failure to state a claim upon which relief may be granted. Because Plaintiff seeks injunctive relief, Acting Warden Alex Jones shall be named as a defendant, in his or her official capacity and for the sole purpose of carrying out any injunctive relief that is ordered. *Id*.

**Count 2**

Plaintiff also seeks to pursue a state law claim against the defendants for intentional infliction of emotional distress. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). The state law claim arises from the same facts as the federal constitutional claim. Accordingly, this Court has supplemental jurisdiction over it.

To state a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must demonstrate that the defendants intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The cause of action has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill.

1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993)). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

The allegations in the Complaint do not support a claim for intentional infliction of emotional distress against the defendants. Plaintiff includes no allegations which suggest that the defendants' conduct was truly extreme or outrageous or that it was intended to cause Plaintiff distress, beyond bald assertions to that effect. Further, Plaintiff fails to allege that he actually suffered severe emotional distress in anything other than conclusory terms. Count 2 shall be dismissed without prejudice against all of the defendants.

## Interim Relief

Plaintiff mentions injunctive relief in the opening paragraph of his Complaint. (Doc. 1, p. 1). However, he does not seek a temporary restraining order ("TRO") or a preliminary injunction. (Docs. 1, 1-1). He also does not mention Rule 65(a) or (b) of the Federal Rules of Civil Procedure, which governs both. *Id*.

In his request for relief, Plaintiff generally asks that the defendants be ordered to provide "[s]ufficient and timely medical surgery to fully, adequately and

15

permanently treat Mr. Youngblood's serious medical conditions, including but not limited to inguinal hernias of the groin." (Doc. 1, p. 11). Even there, Plaintiff does not mention a request for immediate surgery on his second hernia. (Docs. 1, 1-1). He also does not indicate that a medical professional has recommended it. *Id*. Further, although he complains of intermittent pain, Plaintiff does not allege that he has recently requested or been denied treatment for pain. *Id*. In light of these considerations, the Court does not construe his request for "injunctive relief" as a request for immediate relief under Rule 65.

With that said, the Court takes Plaintiff's complaints and allegations of pain very seriously. If Plaintiff believes that urgent relief is necessary and has been denied by the defendants, he may file a separate "Motion for TRO and/or Preliminary Injunction Pursuant to Rule 65" in this case at any time during the pending action. The motion should describe the exact relief he seeks and the reasons for his request.

### Pending Motion

Plaintiff filed a Motion for Appointment of Counsel (Doc. 3), which shall be **REFERRED** to a United States Magistrate Judge with direction to appoint counsel as soon as possible to assist plaintiff. The petitioner has made a good faith effort to obtain counsel on his own and although his complaint is respectable, as demonstrated by this ruling, he lacks sufficient skill to represent himself, particularly given the medical complexities of the issues at bar.

### Disposition

The Clerk is **DIRECTED** to **ADD** Acting Warden Alex Jones (in his or her official capacity only) as a defendant in CM/ECF. This defendant is named herein for the sole purpose of carrying out any injunctive relief that is ordered.

**IT IS HEREBY ORDERED** that **COUNT 1** is subject to further review against Defendants **WEXFORD HEALTH SOURCES, INC., JOHN BALDWIN,** and **DOCTOR JOHN TROST**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** without prejudice against all of the defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendants **ILLINOIS DEPARTMENT OF CORRECTIONS, GUY PIERCE, KURTIS HUNTER, KIMBERLY BUTLER, JOHN DOE #1,** and **JOHN DOE #2** are **DISMISSED** without prejudice from this action because the Complaint fails to state a claim against these defendants for relief. The Clerk is directed to **TERMINATE** these defendants as parties in CM/ECF.

With regard to **COUNT 1**, the Clerk of Court shall prepare for Defendants **WEXFORD HEALTH SOURCES, INC., JOHN BALDWIN, DOCTOR JOHN TROST,** and **ALEX JONES (official capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the

Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre- proceedings, including appointment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a **United States Magistrate Judge** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of

the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: August 17, 2017

Judge Herndon
2017.08.17
07:29:54 -05'00'

**United States District Judge**