IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIMOTHY LORNE YOUNGBLOOD,

Plaintiff,

v.

No. 17-cv-807-DRH-SCW

ILLINOIS DEPT. OF CORRECTIONS, ET AL.,

Defendants.

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

## I. Introduction

Pending before the Court is an August 6, 2018 Report and Recommendation ("the Report") issued by Magistrate Judge Stephen C. Williams. (Doc. 64). The Report recommends the Court deny Defendant Trost's Motion for Summary Judgment. (Doc. 46). The parties were allowed time to file objections and on August 23, 2018, Dr. Trost filed an objection to the Report. (Doc. 66). Based on the applicable law, the record and the following, the Court **ADOPTS** the Report in its entirety.

## II. Background

On July 28, 2017, Plaintiff Youngblood filed his complaint. (Doc. 1). Pursuant to the Court's threshold order, Plaintiff's Complaint contained one count that survived review pursuant to 28 U.S.C. § 1915A: namely, Plaintiff alleges that

he was provided inadequate medical care for multiple inguinal hernias by the various Defendants while incarcerated at Sangamon County Jail, Shawnee Correctional Center, Pontiac Correctional Center, and Menard Correctional Center. (Doc. 8, pp. 6, 8–13).

On December 29, 2017, Defendant Trost filed a Motion for Summary Judgment on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing suit by failing to properly file and appeal a grievance concerning any actions of Defendant Trost in accordance with Illinois' administrative procedures. Specifically, Defendant Trost argues that Plaintiff's mere transfer of institutions is not an excuse for failing to comply with applicable exhaustion requirements.

On August 6, 2018, Magistrate Judge Williams submitted the Report regarding the pending Motion for Summary Judgment and recommends that the Court deny said motion. On August 23, Defendant Trost filed an objection to the Report. (Doc. 66).

### III. Applicable Law

1. **Summary Judgment Standard**

Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). The party seeking summary judgment bears the initial burden of demonstrating – based on

the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014).

In assessing a summary judgment motion, the district court normally views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the

non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

2. **The Prison Litigation Reform Act's Exhaustion Requirement**

The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the Prison Litigation Reform Act ("PLRA") exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the Illinois Department of Corrections ("IDOC"). *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The PLRA provides that "no action shall be brought [under federal law]

with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, exhaustion of administrative remedies is mandatory, and unexhausted claims cannot be brought in court. *Jones,* 549 U.S. at 211. The case may proceed on the merits only after any contested issue of exhaustion is resolved by the court. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

The Seventh Circuit takes a strict compliance approach to exhaustion; requiring inmates follow all grievance rules established by the correctional authority. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner must therefore "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002). But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). If the prisoner fails to follow the proper procedure, however, the grievance will not be considered exhausted. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

3. **Exhaustion Requirement under Illinois Law**

IDOC's process for exhausting administrative remedies is laid out in the IDOC's Grievance Procedures for Offenders. 20 Ill. Adm. Code § 504.810. Prisoners need not file "multiple, successive grievances raising the same issue . . .

if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Separate complaints about particular incidents are only required if the underlying facts or the complaints are different. *Id.*

### IV. Analysis

The Court's review of the Report is governed by 28 U.S.C. § 636(b)(1), which provides in part:

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b) also directs that the Court must only make a *de novo* determination of those portions of the report and recommendation to which specific written objection has been made. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). If no objection or only a partial objection is made, the Court reviews those unobjected portions for clear error. *Id*. In addition, failure to file objections with the district court "waives appellate review of both factual and legal questions." *Id*. Under the clear error standard, the Court can only overturn a Magistrate Judge's ruling if the Court is left with "the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

As highlighted in the Report, "evidence in the record shows that Plaintiff submitted grievances in March 2016 and May 2016, and, at least, exhausted the

May 2016 grievance. (Doc. 47-3, pp. 18–20, 47–51). Plaintiff's May 2016 grievance identified and described both of Plaintiff's hernias, and specifically requested immediate surgery on both hernias." (*Id*. at p. 50). On January 3, 2017, after IDOC personnel had transferred Plaintiff to Menard Correctional Center ("Menard"), Menard personnel conducted a physical examination of Plaintiff and acknowledged the existence of a second hernia which was the same hernia outlined in Plaintiff's May 2016 grievance. (Doc. 1-1, p. 5). On January 26, 2017, the Administrate Review Board ("ARB") denied as "moot" Plaintiff's May 16 grievance, noting that "surgery [for Plaintiff's right hernia] will be scheduled." (Doc. 47-3, p. 46). The record further indicates that Defendant Trost and other Menard medical personnel examined Plaintiff, evaluated Plaintiff's hernias, and recommended that Plaintiff receive surgery only on his right inguinal hernia.

Defendant Trost objects to the Report by arguing, among other things, that *Turley* is inapplicable to this matter because in *Turley*, unlike this case, the entire series of relevant events occurred at Menard. *Turley*, 729 F.3d at 648. The above distinction does not make *Turley* inapplicable because Plaintiff Youngblood's May 2016 grievance still presents general allegations of inadequate medical care that continued after his transfer to Menard.

Defendant Trost urges the Court to rely on *Abdullah v. Shah*, 2018 WL 1833149 (S.D. Ill. February 9, 2018) (Magistrate Judge Donald G. Wilkerson) (adopted on February 28, 2018 by District Judge Nancy J. Rosenstengel). As noted in Defendant Trost's objection, "In *Abdullah*, the Court determined that

when the main treating physician is changed, it allows for re-evaluation by the new treating physician, and thus there is independent judgment and treatment; these intervening factors terminate a continuing violation. *Id.* at *4. In making the above finding, the *Adullah* Court clearly placed great significance on the fact that Mr. Adullah's grievance was related to a specific doctor rather than treatment as whole. As stated by the court:

> In Plaintiff's grievances regarding Dr. Shah, he takes great pain to outline his specific interactions with Dr. Shah and the treatment that the doctor provided or did not provide—he was not simply complaining about the treatment from the healthcare unit as a whole but rather Dr. Shah specifically. *See e.g. Owens v. Duncan*, 2017 WL 958507 (S.D. Ill. March 13, 2017) (noting that "plaintiff's suit involved a continuing problem with the healthcare unit . . . ."). While such a grievance certainly would place the prison on notice that Plaintiff was dissatisfied that Dr. Shah's treatment of his conditions, it is insufficient to place the prison on notice that he was dissatisfied with all the treatment provided by the entire healthcare unit into the future.

*Id.*

Here, unlike in *Abdullah*, Plaintiff Youngblood's May 2016 grievance does not take great pain to outline his specific interactions with a specific doctor. (Doc. 1-1, p. 50). Rather, the grievance, without mentioning the attending doctor by name, takes issue with Plaintiff Youngblood's treatment as a whole and requests surgery on both hernias. *Id.* After IDOC personnel transferred Plaintiff Youngblood to Menard he notified Menard personnel of his continuing medical condition that was outlined in his May 2016 grievance. (Doc. 1-1, p. 5). As the Report correctly points out:

> Plaintiff submitted grievances requesting surgery for both of his
Page **7** of **8**

> hernias—while Plaintiff ultimately received part of his requested treatment with the surgery on his right hernia, his providers disagreed with his request for surgery on the left hernia. The ARB, pointing to the providers' recommendation and approval of the right hernia surgery, denied Plaintiff's grievance. Plaintiff has therefore properly exhausted his administrative remedies as to both of his hernias, and Defendant Trost may not rely on the fact that Plaintiff failed to re-grieve the same, continuing condition while at Menard to obtain summary judgment.

(Doc. 64, p. 11).

Therefore, the Court finds that Plaintiff Youngblood properly exhausted his administrative remedies prior to filing the present suit.

## Conclusion

Accordingly, the Court **ADOPTS** the Report (Doc. 66). The Court **DENIES** Defendant Trost's Motion for Summary Judgment (Doc. 46) for the reasons given in the Report and Recommendation.

**IT IS SO ORDERED.**

Judge Herndon
2018.08.27
16:03:21 -05'00'

**United States District Judge**